# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Civil Action No. 15-cv-02404-WJM-CBS

S.D., a minor, through her Parents and Next Friends Douglas J. Dyer and Leah S. Dyer,
LEAH S. DYER,
DOUGLAS J. DYER,
DYLAN J. DYER,

    Plaintiffs,

v.

DENISE LAJEUNESSE, in her individual capacity and as an employee of the Larimer County Department of Human Services ("LCDHS"),
ANTOINETTE SACHELBEN, in her individual capacity and as an employee of the LCDHS,
MICHELLE WALKER, in her individual capacity and as an employee of the LCDHS,
SUSAN KAUHL, in her individual capacity and as an employee of the LCDHS,
COUNTY OF LARIMER, COLORADO,
BEN RAYLS, in his individual capacity and as an employee of the Fort Collins Police Department ("FCPD"),
KATHLEEN CARVER, in her individual capacity and as an employee of the FCPD,
SEAN GIDDINGS, in his individual capacity and as an employee of the FCPD, and
THE CITY OF FORT COLLINS, COLORADO, a municipal corporation,

    Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITHOUT PREJUDICE

This civil rights action is brought by Plaintiff S.D., through her parents Douglas and Leah Dyer; as well as by Douglas and Leah Dyer themselves; and by Dylan Dyer, S.D.'s brother (collectively, "Plaintiffs"). (ECF No. 25 ¶¶ 1–4.) Plaintiffs sue various individuals and entities whom the Court will refer to as follows: Denise Lajeunesse, Antoinette Sachelben, Michelle Walker, Susan Kauhl, and Larimer County will be collectively referred to as the "County Defendants"; and Ben Rayls, Kathleen Carver,

Sean Giddings, and the City of Fort Collins will be collectively referred to as the "City Defendants."

Before the Court are two motions to dismiss Plaintiffs' Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), one motion brought by the City Defendants (ECF No. 30) and the other brought by the County Defendants (ECF No. 31). For the reasons explained below, these motions are granted, but Plaintiffs are granted leave to file a Third Amended Complaint.

## I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II.  FACTS

During the time period relevant to this lawsuit, Defendant Lajeunesse was a caseworker for the Larimer County Department of Human Services ("LCDHS").  (ECF No. 25 ¶ 6.)  On October 24, 2013, Lajeunesse "approved supervised parenting time and referral to a foster home for Plaintiff S.D.," allegedly "intending to interfere with [Plaintiffs'] familial relationship."  (*Id*. ¶ 13.)  The following day, a Colorado judge granted LCDHS's *ex parte* motion for an order permitting LCDHS to require Leah and Douglas Dyer's cooperation in an investigation of potential abuse of S.D.  (*Id*. ¶¶ 14–15.)  *See also* Colo. Rev. Stat. § 19-3-308(3)(b).  Specifically, the warrant required Leah and Douglas Dyer to "produc[e] [S.D.] for an interview/inspection with [LCDHS]" and to "allow[] inspection of the child's place of residence by [LCDHS]."  (ECF No. 31-2 at 1.)[1]

On October 28, 2013, Defendants Carver and Giddings (both Fort Collins police officers) went to Plaintiffs' home and "made repeated requests" to enter.  (ECF No. 25 ¶¶ 18–19.)  Carver and Giddings did not have "any paperwork in hand and certainly no warrant of any kind," but stated that they were there to assist LCDHS in a welfare check.  (*Id*. ¶¶ 20–21.)  Plaintiff Leah Dyer asked that Carver and Giddings wait outside

---

[1] The warrant itself is not attached to Plaintiffs' complaint, but is instead supplied by the County Defendants as an exhibit to their motion to dismiss.  The Court may take judicial notice of this warrant—an official court record—without converting the County Defendants' motion to one for summary judgment.  *Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008) (district court properly took judicial notice of state court records).  The Court can likewise consider this warrant in a Rule 12(b)(6) posture if the warrant is (1) "mentioned in the complaint," (2) "central to [the] claims [at issue]," and (3) not challenged as inauthentic.  *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013).  All three elements are satisfied here.

3

until LCDHS caseworkers arrived.  (*Id*. ¶ 23.)  It is not clear how Leah Dyer knew that LCDHS caseworkers were on their way.  In any event, Carver and Giddings refused this request, announced that they were entering the home, and then entered.  (*Id*. ¶¶ 24–25.)  They did not have a warrant to enter,[2] nor did exigent circumstances exist.  (*Id*. ¶ 25.)

At that time, seven-year-old S.D. was in Plaintiffs' living room, watching a movie and playing with toys, and unaware of the police officers' entry.  (*Id*. ¶¶ 26–27, 49.)  Carver and Giddings found S.D. there, "stood over [her]," and "announced their presence, by saying 'HI S.D.'" (*Id*. ¶ 28 (capitalization in original).)  "S.D. was startled by their sudden outburst and their arrival and immediately went into a seizure event."  (*Id*. ¶ 29.)  Leah Dyer began attending to S.D., while Carver "proceeded to ask Mrs. Dyer questions" of an unspecified nature.  (*Id*. ¶¶ 31–32.)

Another Fort Collins police officer, Defendant Rayls, entered the house around this time, "also without a warrant."  (*Id*. ¶ 33.)  One of the police officers called for paramedic assistance.  (*Id*. ¶ 34.)

A short time later, the paramedics arrived, as did Lajeunesse and Defendant Sachelben, another LCDHS caseworker.  (*Id*. ¶ 36.)  Lajeunesse and Sachelben conferred with the paramedics in the Plaintiffs' driveway, then Lajeunesse and Sachelben "pulled Mrs. Dyer away from S.D."  (*Id*. ¶ 37.)[3]  The paramedics then began

---

[2] Although a warrant existed permitting LCDHS to enter Plaintiffs' home, the City Defendants do not argue that the warrant gave any police officer authority to enter the home independent of LCDHS.

[3] Presumably Lajeunesse and Dyer entered the house before doing so, although the complaint does not say so explicitly.

to examine S.D., and as they did so, Lajeunesse and Sachelben questioned Leah Dyer, while Carver questioned Douglas Dyer.  (*Id*. ¶¶ 40–42.)

In the midst of this questioning, the paramedics began removing S.D. from the home.  (*Id*. ¶ 43.)  All of the then-present Defendants (Lajeunesse, Sachelben, Carver, Giddings, and Rayls) in some unspecified manner "agreed to and authorized and participated in S.D.'s removal from her family home," "[w]ithout permission from S.D.'s parents."  (*Id*. ¶ 48.)  "Mrs. Dyer frantically asked 'What is going on?' and 'Where are they taking S.D.?'"  (*Id*. ¶ 44.)  As it turned out, the paramedics took S.D. to a local hospital.  (*Id*. ¶ 45.)

Leah and Douglas Dyer asked the then-present defendants to leave so that they (the Dyers) "could accompany S.D. at the hospital."  (*Id*. ¶ 46.)  But Giddings, Carver, and Rayls "remained outside of Plaintiffs' home continuing to investigate."  (*Id*. ¶ 47.)

Apparently Leah and Douglas Dyer eventually made their way to the hospital, where hospital staff refused to let them see their daughter "for close to five hours" in light of unspecified "information" given to hospital staff by Lajeunesse, Sachelben, Walker, Carver, Giddings, and/or Rayls.  (*Id*. ¶¶ 50, 70.)  "S.D. was without any familial support during these [five] hours."  (*Id*. ¶ 52.)

### III.  ANALYSIS

#### A.    Summary of Claims

Plaintiffs nominally assert two claims for relief, both arising under 42 U.S.C. § 1983.  The Court will describe them in reverse order given that the second claim is simpler to understand than the first.

Plaintiffs' second claim for relief ("Count Two") asserts municipal liability against Fort Collins and Larimer County, and claims that all of the alleged constitutional violations apparently evident in the complaint

> were caused by implementation of formal or informal customs, formal or informal policies, or official acts of Defendants Larimer County and the City of Fort Collins, or adopted by those Defendants implicitly, or the failure to properly implement such customs, policies or official acts necessary to protect Plaintiffs' constitutional right of familial association . . . .

(ECF No. 25 ¶ 74.)  Plaintiffs further assert that Fort Collins and Larimer County "have a policy or policies, of allowing police officers and [LCDHS] workers to make decisions without reference to applicable statutes and regulations that are designed to protect the rights of individuals such as Plaintiffs."  (*Id*. ¶ 76.)

The first claim for relief ("Count One") is more difficult to understand, given that it is a mash-up of civil rights terminology suggesting numerous theories of recovery.  (*See* ECF No. 25 ¶¶ 57–72 (mentioning, among other things, "undu[e] burden[] [to a] protected relationship," "deliberately indifferent behavior," "rights to familial association," "procedural and substantive due process," and the "right to be free in their home, and other rights protected by the fourth amendment").)  In their responses to the motions to dismiss, Plaintiffs attempt to clarify, although little clarity is added:

> The first claim . . . [alleges] that the defendants deprived Plaintiffs of their constitutional rights, against unreasonable searches and seizures and intending to interfere with Plaintiffs' rights to familial association by forcing a separation of Plaintiffs Dyer from child S.D.  That claim includes an allegation that Defendants subjected Plaintiffs to deprivation of their procedural and substantive due process rights engaging in conduct inconsistent with statutes of the United States and the State of Colorado and polices and

>Regulations of the United States and the State of Colorado, all of which conduct deprived each of the Plaintiffs their constitutional rights to familial association.  [Paragraph] 67 of the Complaint alleges that Defendants Larimer County and the City of Fort Collins failed to adequately supervise and train the individually named Defendants in proper methods and procedures regarding the methods and procedures necessary to protect children and their parents and from depriving children and their parents from the right to familial association, whether maternal, paternal or filial.

(ECF No. 43 at 3; *see also* ECF No. 45 at 3.)

Considering Plaintiffs' Second Amended Complaint and their briefing, Plaintiffs' Count One appears to be potentially asserting any or all of the following:

- a Fourth Amendment claim by S.D. based on her removal from her home, *see J.B. v. Washington Cnty.*, 127 F.3d 919, 928 (10th Cir. 1997) ("the County officials' temporary removal of [the child] from her home is a seizure which implicates [the child's] own Fourth Amendment rights");

- a Fourth Amendment claim by all Plaintiffs based on the Fort Collins police officers' choice to enter Plaintiffs' home before LCDHS employees arrived, *see Franz v. Lytle*, 997 F.2d 784, 790–93 (10th Cir. 1993) (police officers must have a warrant to enter a home, or satisfy a usual exception to the warrant requirement, when investigating child abuse);

- a Fourteenth Amendment procedural due process claim based on S.D.'s forced separation from her parents without any sort of process, *see id*. at 924–25 (parents have a liberty interest in the custody, care, and management of their children, that normally may not be interfered with absent procedural safeguards);

- a Fourteenth Amendment substantive due process claim based on interference with the right to familial association, *see id*. at 927 ("[the] right of familial association is included in the substantive due process right of freedom of intimate association");
- a municipal liability claim against Fort Collins and Larimer County (separate from Count Two) for failure to train the individual defendants to avoid infringing on the right to familial association, *see City of Canton v. Harris*, 489 U.S. 378, 387–88 (1989) (discussing municipal liability for failure to train employees).

Save for the failure to train claim, it is not clear whether Plaintiffs are directing their claims at all Defendants or only some of them.

## B.  Individual-Capacity Claims

The Court is troubled that it has been required to parse Plaintiffs' filings—particularly Count One—in this manner. This is an exercise normally reserved for actions in which the plaintiff is proceeding *pro se*, not actions where the plaintiff is represented by counsel, as here. With the exception of the municipal liability claims, Defendants obviously struggled with the same problem as they attempted to determine what theories of liability they might challenge. (*See, e.g.*, ECF No. 31 at 7–12.)

Defendants' arguments tend to assume that they have properly divined Plaintiffs' intent, but the Court is not so certain, nor is the Court "charged with making the parties' arguments for them." *Meyer v. Bd. of County Comm'rs*, 482 F.3d 1232, 1242 (10th Cir. 2007). Particularly with respect to the portions of Count One directed at individual

Defendants, Plaintiffs' complaint presents not so much a "plausibility" problem under *Twombly* and *Iqbal*, but a failure under the since-abrogated, more lenient standard requiring that the defendant receive "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Rather than assuming that Plaintiffs intend to bring one type of claim or another against the various individual Defendants, the Court will dismiss without prejudice all individual Defendants and grant Plaintiffs leave to file a Third Amended Complaint.[4] If Plaintiffs elect to file such a complaint, the Court expects to see far more specificity and precision. In particular: (1) each analytically distinct theory of relief must be set forth as a separate count (*e.g.*, a Fourth Amendment claim and a substantive due process claim should not be alleged in the same count); (2) each count should specify the Defendants that Plaintiffs seek to hold liable under that theory of relief; and (3) each count must summarize the allegations that justify relief against each accused Defendant.

Plaintiffs' factual allegations also require greater detail. For example:

- When Carver and Giddings arrived, how did Leah Dyer know that LCDHS workers were also on their way?

- What questions did Carver ask Leah Dyer while Leah was attending to S.D.?

---

[4] By the time of a second amended complaint, it is often the case that pleading deficiencies such as those evident here may be deemed irreparable, and the complaint will be dismissed with prejudice. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend properly denied after "repeated failure to cure deficiencies by amendments previously allowed"). However, Plaintiffs' Second Amended Complaint is the first version of their complaint to be challenged by Defendants. Accordingly, Plaintiffs have never before received an opportunity to cure deficiencies identified by this Court.

- What specific information did any Defendant give to the hospital to convince the hospital to deny Leah and Douglas Dyer's access to S.D., and which specific Defendant conveyed that information?

- What circumstances support an allegation that a particular Defendant intended to interfere with the Dyers' familial relationship?[5]

More generally, Plaintiffs are encouraged to elucidate the "who, what, where, when, why, and how" to the greatest extent of their current knowledge. Counsel for Plaintiffs are warned that if the Court again finds itself in a similar situation, attempting to parse Plaintiffs' theories from inadequate pleading and/or briefing, it may grant relief to Defendants and/or deny relief to Plaintiffs solely on that basis.

**C.   Municipal Defendants**

Fort Collins and Larimer County both argue that the municipal liability claims asserted against them are entirely conclusory. (ECF No. 30 at 4–7; ECF No. 31 at 12–15.) The Court agrees. The factual portion of Plaintiffs' complaint recounts the alleged actions of the individual Defendants on October 28, 2013, with no mention of acting according to municipal policy or with inadequate training. (*See* ECF No. 25 ¶¶ 13–56.) Then, without any background or context, the complaint simply asserts that

---

[5] A substantive due process claim based on interference with the familial relationship requires "an allegation of intent to interfere." *Trujillo v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 768 F.2d 1186, 1190 (10th Cir. 1985). Stated differently, "to rise to the level of a constitutional claim, the defendant must *direct* his or her statements or conduct at the [familial] relationship with knowledge that the statements or conduct will adversely affect that relationship." *Griffin v. Strong*, 983 F.2d 1544, 1548 (10th Cir. 1993) (emphasis in original). Although states of mind such as intent may be alleged generally, *see* Fed. R. Civ. P. 9(b), such an allegation must not be a mere recitation of the elements. There must be at least a plausible basis from which to infer intent. *See Biro v. Conde Nast*, 807 F.3d 541, 544–45 (2d Cir. 2015) (matters that may be alleged "generally" under Rule 9(b) must still be alleged plausibly), *cert. denied*, 136 S. Ct. 2015 (2016).

Fort Collins and Larimer County are liable for failure to train and/or failure to implement a preventative policy, thus causing the individual Defendants (or some of them) to act in an allegedly unconstitutional manner. "Plaintiff[s] cannot state a plausible claim of municipal liability by identifying a single incident of alleged violations and then, without any further factual substantiation, contending that such actions were consistent with and caused by a municipal policy, procedure, or failure to train." *Salazar v. Castillo*, 2013 WL 69154, at *6 (D. Colo. Jan. 7, 2013).

In response, Plaintiffs attempt to rehabilitate this claim by pointing to municipal policies that the individual Defendants allegedly *failed* to follow. (ECF No. 43 at 7, 9–10; ECF No. 45 at 8–10.) Apart from the fact that these specific policies were not alleged in the complaint,[6] an individual Defendant's failure to follow municipal policy is obviously not caused by a municipal policy. Accordingly, the portion of Count One asserting municipal liability against Fort Collins and Larimer County, and all of Count Two, will be dismissed without prejudice.

### D.     "Official Capacity" Claims

The caption of Plaintiffs' complaint names all of the individual Defendants in their "individual" or "personal" capacities, but also as "employee[s]" of their various governmental employers. (ECF No. 25 at 1.) It thus appears that Plaintiffs may have named the individual Defendants in their official capacities as well. The City Defendants and County Defendants both attack the complaint to the extent it seeks to hold the individual Defendants liable for damages in their official capacities. (ECF No.

---

[6] *See Sudduth v. Citimortgage, Inc.*, 79 F. Supp. 3d 1193, 1200 n.2 (D. Colo. 2015) (plaintiff may not use a response to a motion to dismiss to amend the complaint).

30 at 7–8; ECF No. 31 at 12–13.)

"Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (internal quotation marks and citation omitted). Here, Plaintiffs appears to acknowledge this implicitly because Plaintiffs' response makes no argument for retaining any individual Defendant specifically as an official capacity defendant as well. Rather, Plaintiffs seem to treat all individual Defendants as surrogates for their employers, and Plaintiffs then go on to argue regarding the various allegedly violated policies already mentioned above. (ECF No. 43 at 8–11; ECF No. 45 at 7–11.) The Court therefore deems Plaintiffs to have conceded that the true target of any official capacity claim is Fort Collins and/or Larimer County, and that the official capacity claims are the same as those already alleged against those entities. Accordingly, all individual Defendants will be dismissed with prejudice to the extent sued in their official capacities.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The City Defendants' Motion to Dismiss (ECF No. 30) is GRANTED;
2. The County Defendants' Motion to Dismiss (ECF No. 31) is GRANTED;
3. All individual Defendants (Kathleen Carver, Sean Giddings, Susan Kauhl, Denise Lajeunesse, Ben Rayls, Antoinette Sachelben, and Michelle Walker) are DISMISSED WITH PREJUDICE to the extent sued in their official capacities;

4. Plaintiffs' Second Amended Complaint (ECF No. 25) is DISMISSED WITHOUT PREJUDICE;

5. Plaintiffs are GRANTED LEAVE to file a Third Amended Complaint on or before **February 17, 2017**, and shall comply with D.C.COLO.LCivR 15.1(a) when doing so; and

6. If Plaintiffs do not timely file a Third Amended Complaint, this action may be dismissed with prejudice without prior notice from the Court.

Dated this 20th day of January, 2017.

BY THE COURT:

William J. Martinez
United States District Judge